Abraham L. MIDGETT, III, Appellant,

v.

COOK INLET PRE–TRIAL FACILITY, Allan Terreault, Nathaniel Smith, and Lisati Augafa, Appellees.

No. S–9948.

Supreme Court of Alaska.

Aug. 30, 2002.

---

Abraham L. Midgett, III, pro se, Estill, South Carolina.

William F. Morse, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

While awaiting sentencing as a federal prisoner at Cook Inlet Pretrial Facility, Abraham L. Midgett, III got into a fight with another inmate. During the melee, Midgett broke his ankle. He sued the state in federal court on various theories. After failing to gain relief there, Midgett filed suit in superior court alleging negligence, violations of his constitutional rights, breach of contract, and medical malpractice. The superior court ruled that Midgett's constitutional claims were barred by collateral estoppel, granted summary judgment to the state on his contract claims, dismissed his medical malpractice claim, and found that Midgett did not carry his burden of proof on his claim of negligence. Because the superior court did not err in its determinations, we affirm.

## II. FACTS AND PROCEEDINGS

### A. The Fight

Abraham L. Midgett, III was a federal prisoner awaiting sentence at Cook Inlet Pretrial Facility (Cook Inlet) in Anchorage. Midgett was housed in the Bravo Module of Cook Inlet and was the module worker, unlike the other module inmates who were in administrative or disciplinary segregation. As the module worker, Midgett had greater freedom and responsibilities than the other Bravo inmates, including greater freedom of movement, a hinged swinging door that locked by key, which Midgett could lock and unlock himself, and the responsibility to deliver food and other items to other inmates and to clean up the common area.

On June 8, 1998 Officer Nathaniel Smith was the only correctional officer in Bravo. Officer Smith observed Midgett exchanging words with Inmate Kelly Smith (Inmate Smith) at Inmate Smith's locked cell door. Midgett then reported to Officer Smith that Inmate Smith spit on him. Thirty minutes after the interaction between Midgett and Inmate Smith, it was Inmate Smith's turn to be escorted to the showers.

Inmate Smith was classified as a maximum custody prisoner who, by regulation, was required to be under the supervision of two staff members and to wear handcuffs when he was outside his cell. Before opening Inmate Smith's cell, Officer Smith radioed for another officer. After Officer Lisati Augafa entered Bravo, Inmate Smith's door was opened. Inmate Smith, however, was not handcuffed, as required by Cook Inlet's Standard Operating Procedure, before his door was opened. When Inmate Smith was taken out of his cell, Midgett was in his own cell, two doors down from Inmate Smith on the first tier of the Bravo module.

The trial court heard conflicting testimony about how the fight between Inmate Smith and Midgett began. Midgett testified that Inmate Smith was the aggressor, that Midgett acted in self-defense, and that the fight was more of a wrestling match. Officers Smith and Augafa testified that Midgett was the aggressor, approaching Inmate Smith with a squeegee, a glass-cleaning tool, that had been altered. Officer Smith testified that Inmate Smith kicked Midgett in self-defense. Officer Smith radioed for assistance because of the "fight in Bravo." Both officers testified that Inmate Smith broke away from Officer Smith, ran upstairs, grabbed a broomstick, and was subdued before he could reach Midgett.

### B. The Injury

During the course of the fight, Midgett injured his ankle. Midgett and another in-

mate testified that the injury occurred when Officer Smith stepped on his ankle in the course of trying to break up the fight. Midgett was eventually diagnosed with a broken, though not displaced, ankle by Dr. Christopher Horton, an orthopedic surgeon. Dr. Horton placed Midgett's ankle into a soft air cast due to the lack of displacement and the amount of swelling. Midgett was told not to place weight on the ankle and to keep his leg elevated. Midgett did not follow this advice, the fracture became displaced, and surgery became necessary. On July 18, 1996 Midgett underwent surgery to repair his now displaced ankle. Dr. Horton testified that the ankle had healed after surgery as he expected it to and that he saw no evidence of a permanent disability.

## C. The Proceedings

Midgett filed suit in federal district court under 42 U.S.C. § 1983, alleging that Officers Smith and Augafa used excessive force in breaking up the fight, thereby violating the Eighth Amendment and depriving Midgett of his civil and constitutional rights under the Fourteenth Amendment. United States District Court Judge James K. Singleton found that Midgett did not have a constitutional claim and dismissed the case with prejudice as to the constitutional claims. However, Judge Singleton stated that the dismissal did not affect any actions Midgett wished to bring in state court under Alaska's Tort Claims Act.

Midgett filed suit against Cook Inlet, Officers Smith and Augafa, and Allan Terreault, superintendent of Cook Inlet, in state court. Midgett claimed that disregard of standard operating procedures by Officers Smith and Augafa caused his injury and amounted to constitutional violations under the Eighth and Fourteenth Amendments. Concluding that Midgett's constitutional claims were barred by collateral estoppel, Superior Court

Judge Rene J. Gonzalez dismissed those claims. Judge Gonzalez allowed Midgett to amend his complaint to include any state causes of action that he may have had against the defendants.

Midgett then filed an amended complaint, apparently claiming breach of contract, negligence, and violations of his constitutional rights. Midgett. also filed motions for the appointment of counsel and to appear before the court during trial, both of which Judge Gonzalez denied. The defendants moved for partial summary judgment on Midgett's claims of breach of contract, negligence, and a possible claim of medical malpractice, noting that the constitutional claims had already been adjudicated in federal court. Judge Gonzalez granted summary judgment on the breach of contract claim. A court trial ensued on the medical malpractice and negligence claims.

Judge Gonzalez issued his findings of fact and conclusions of law on October 23, 2000. Judge Gonzalez found that the evidence presented at trial did not support the medical malpractice cause of action and dismissed it.[1] On the negligence cause of action, Judge Gonzalez found that Midgett failed to meet his burden of proof by a preponderance of the evidence. Final judgment was entered on Cook Inlet's behalf on November 17. Midgett appeals.

## III. STANDARD OF REVIEW

Issues of collateral estoppel are questions of law, which we review using our independent judgment.[2] The decision to appoint counsel for a civil litigant is a procedural decision, which we review for abuse of discretion.[3] Decisions concerning the telephonic appearance of a party are also reviewed for abuse of discretion.[4] "Reversal is warranted only if we are left with a definite and firm conviction, after reviewing the en-

---

1. Judge Gonzalez also found the evidence insufficient on the breach of contract claim and dismissed that claim; this was the claim that had previously been dismissed on summary judgment.

2. *Griswold v. City of Homer*, 34 P.3d 1280, 1283 (Alaska 2001).

3. *Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 254 (Alaska 2000).

4. *Silvers v. Silvers*, 999 P.2d 786, 789 (Alaska 2000).

tire record, that a mistake has been made." [5] We review a court's factual findings under the clearly erroneous standard.[6]

We review a superior court's grant of summary judgment *de novo*, drawing all reasonable factual inferences in favor of the non-moving party and granting summary judgment where no genuine issues of material fact exist and where the moving party is entitled to judgment as a matter of law.[7] When reviewing questions of law, "we apply our independent judgment and adopt the rule of law that is most persuasive in light of precedent, reason, and policy." [8]

## IV. DISCUSSION

### A. Midgett's Constitutional Claims Are Barred by Collateral Estoppel.

Judge Gonzalez held that Midgett's constitutional claims were barred by collateral estoppel, as they had already been adjudicated and dismissed by the federal court. Midgett now argues that his Eighth Amendment right to be free from cruel and unusual punishment, his Fourteenth Amendment right to equal protection, and a general right to due process were violated by the officers at Cook Inlet.

We require four elements to be met before collateral estoppel applies:

(1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits;

and (4) the determination of the issue was essential to the final judgment.[9]

Midgett filed suit against Cook Inlet, Officers Smith and Augafa, and Superintendent Terreault in federal court,[10] apparently alleging violations of his Eighth and Fourteenth Amendment rights, including (1) that the prison officials' handling of his broken ankle constituted a failure to attend to serious medical needs; (2) that one of the officers stepping on his ankle and breaking it constituted cruel and unusual punishment; and (3) that the prison officials failed to exercise the appropriate standard of care in protecting Midgett from Inmate Smith and in this way violated the Eighth Amendment, made applicable to the states by the Fourteenth Amendment.[11]

In granting summary judgment to Officer Smith, Judge Singleton held that Midgett failed to raise a genuine issue of material fact on his Eighth and Fourteenth Amendment claims. In granting summary judgment to Officer Augafa and Superintendent Terreault, Judge Singleton concluded (1) that there was no evidence to support a finding that any official was "deliberately indifferent" to Midgett's medical needs; (2) that even if the evidence supported the argument that an officer stepped on Midgett's ankle, such a finding would be insufficient to support a finding of cruel and unusual punishment, as such an action would only support an inference that the force was applied in good faith while attempting to restore discipline; and (3) that the situation did not present the type of "conscious indifference" the U.S. Supreme Court required when imposing

---

5. *Id.*

6. *Bennett v. Artus,* 20 P.3d 560, 562 (Alaska 2001).

7. *Wongittilin v. State,* 36 P.3d 678, 680 (Alaska 2001).

8. *Id.* at 680–81.

9. *Jackinsky v. Jackinsky,* 894 P.2d 650, 654 (Alaska 1995) (citing *Johnson v. State, Dep't of Fish & Game,* 836 P.2d 896, 906 (Alaska 1991)).

10. It appears that Midgett filed suit against a number of people in his first federal complaint. Service, however, was only perfected against Of-

ficer Smith. Judge Singleton dismissed the case against two individuals (Art Tyrol and Paoli-Paoli) that are not identified anywhere else in the record. Judge Singleton also dismissed the case against Cook Inlet, finding that it was not a "person" under 42 U.S.C. § 1983. Judge Singleton went on to grant Officer Smith summary judgment, at which time Midgett may have filed his amended complaint against Officer Augafa and Superintendent Terreault.

11. These claims are taken from the federal court's orders dismissing Midgett's claims.

a duty on prison officials to take reasonable measures to guarantee the safety of inmates.

Midgett's claims in federal court satisfy the requirements of collateral estoppel: (1) He was the plaintiff in the federal action; (2) he brought Eighth and Fourteenth Amendment claims in federal court; (3) the federal court's order was a grant of summary judgment, a final judgment on the merits; and (4) the determination of those constitutional claims were essential to the judgment, as they were the basis of the judgment. Given that Midgett's constitutional claims met the four requirements of collateral estoppel, Judge Gonzalez did not err in granting summary judgment to Cook Inlet.

 Midgett also argues in his reply brief that his Fifth and Sixth Amendment rights were violated in that he was not granted a jury trial. He had not previously made this claim to either the superior court or this court. As the issue was raised for the first time in Midgett's reply brief, we need not consider it.[12]

## B. Midgett Was Not Entitled to Appointed Counsel.

 In November 1999 Midgett moved for appointment of counsel. Judge Gonzalez denied the motion, stating that the court's authority to appoint counsel for *pro se* litigants was limited to specific classes of cases within which Midgett's claim did not fall. Midgett again asked for counsel to assist him in taking depositions of several witnesses prior to trial. Judge Gonzalez again denied Midgett's motion on grounds of timeliness, as discovery had closed, and because of the previous denial of Midgett's motion for counsel. Midgett now argues that he should have

been appointed counsel, as it is the only way for him to obtain his right to due process.

 While an indigent person does not have a right to appointed counsel in most civil cases, we have allowed appointment of counsel in certain civil cases or quasi-civil proceedings by relying on the principles that justify appointment of counsel in criminal proceedings.[13] We have required appointment of counsel in cases involving termination of parental rights,[14] child custody,[15] paternity suits,[16] and civil contempt proceedings for nonpayment of child support.[17]

 As Midgett's claim does not fall into one of the already recognized exceptions for appointment of counsel in a civil proceeding, we must determine whether Midgett's due process rights were violated by the superior court's failure to appoint counsel. We have adopted the balancing test used by the U.S. Supreme Court in *Mathews v. Eldridge*[18] to determine what process is due: [19]

> Identification of the specific dictates of due process generally involves consideration of three distinct factors: the private interest affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail.[20]

The private interest of a litigant in having counsel in a tort case is not as strong as the interests involved in cases where we have already afforded appointed counsel. While an unlitigated tort claim is a species of prop-

---

12. *Leuthe v. State, Commercial Fisheries Entry Comm'n*, 20 P.3d 547, 552 n. 23 (Alaska 2001).

13. *Reynolds v. Kimmons*, 569 P.2d 799, 801 (Alaska 1977).

14. *V.F. v. State*, 666 P.2d 42, 44–45 (Alaska 1983).

15. *Flores v. Flores*, 598 P.2d 893, 895 (Alaska 1979).

16. *Reynolds*, 569 P.2d at 803.

17. *Otton v. Zaborac*, 525 P.2d 537, 538 (Alaska 1974).

18. 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

19. *In the Matter of K.L.J.*, 813 P.2d 276, 279 (Alaska 1991).

20. *Id.* (quoting *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 353 (Alaska 1988)).

erty,[21] it is not nearly as compelling as the right to have children, the right to custody of children, or the right to oppose the deprivation of liberty. A claimant's economic interest in recovering money damages is not particularly compelling under *Mathews v. Eldridge*. Morever, Midgett failed to make any case-specific showing of exceptional circumstances warranting the appointment of counsel.

While Midgett would undoubtedly have had a better chance with a lawyer, the failure of the superior court to appoint counsel in his tort claim did not violate his due process rights. The superior court's decision was not in error.

### C. The Superior Court Did Not Err in Requiring Midgett To Participate Telephonically and by Videotape.

■ Midgett requested that the court issue an order that he be brought before the court for his trial from his placement at the Federal Correctional Institution in South Carolina. Judge Gonzalez denied Midgett's motion due to the cost and inconvenience of transport, the potential danger and security risk that would have to be guarded against, the fact that Midgett's physical presence was not essential for a just disposition, the fact that telephonic and videotaped participation

gave Midgett his right of access to the state courts, and because delaying the trial until Midgett's release from a 262–month sentence was not a viable option. Midgett now appears to argue that the trial court erred in refusing to order Midgett's transport.

■ We have not yet decided the extent to which an inmate has the right to attend a civil trial in which that inmate is a party and is not represented by counsel.[22] Generally, a prisoner has a due process right to reasonable access to the courts which cannot be limited unless the state's interests in security and rehabilitation of prisoners cannot be protected by less restrictive means.[23] Courts in Alabama and Texas have held that trial courts did not err in barring a prisoner from attending future proceedings in tort cases in which that inmate was a party.[24]

In other causes of action, many courts have held that a trial court has the discretion to permit an inmate to be brought before the court, taking into account the costs and inconvenience of transporting a prisoner, the potential danger and security risks, the need for an early determination of the matter, the possibility of delay until the prisoner is released, and the probability of success on the

---

**21.** *Patrick v. Lynden Transp., Inc.*, 765 P.2d 1375, 1378 (Alaska 1988).

**22.** We have held that due process requires a personal hearing in administrative license-revocation proceedings where testimonial credibility is at issue. *Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 20 P.3d 1130, 1139 (Alaska 2001). But *Whitesides* is distinguishable for three reasons: First, unlike *Whitesides*, in which the state affirmatively prosecuted an administrative action against a private person, Midgett has elected to sue here, placing the state in a purely defensive posture. Second, the state sought to deprive Whitesides of a valuable license; Midgett, on the other hand, simply asserts his economic interest in recovering money damages. Third, *Whitesides* required the state to allow in-person testimony in the absence of any case-specific circumstances compelling telephonic proceedings. Here, by contrast, the state has shown compelling and case-specific reasons for a telephonic hearing: the extraordinary costs and security risk associated with transporting an out-of-state prisoner to Alaska for trial.

**23.** Jay M. Zitter, Annotation, *State Prisoner's Right to Personally Appear at Civil Trial to Which*

*He Is a Party—State Court Cases,* 82 A.L.R.4th 1063 (1990) (collection and discussion of state cases in which courts have considered circumstances under which prisoner in state institution has right to appear in person at civil trial not arising out of incarceration where prisoner is direct or named party).

**24.** *Lightfoot v. McDonald*, 587 So.2d 936, 938 (Ala.1991) (holding that prisoners do not have right to attend proceedings in civil actions initiated by them that are unrelated to their confinement and that superior court's denial of prisoner's request to attend malpractice action initiated by him against attorney who represented him in criminal prosecution was not abuse of discretion); *Brewer v. Taylor*, 737 S.W.2d 421 (Tex. App.1987) (holding that inmate sentenced to life failed to satisfy burden of showing why his personal appearance was justified to allow him to personally appear in *pro se* malpractice action filed against his criminal defense attorney where he was being held more than eighty miles from district court and risks of him attending trial were obvious and real).

merits.[25]

Here, the trial court allowed Midgett to participate telephonically, with his deposition taken by videotape. Alaska Rule of Civil Procedure 99 authorizes telephonic participation in cases where there is good cause and there is not substantial prejudice to the parties.[26] Here, good cause to allow Midgett's telephonic participation existed: The cost of transporting Midgett from his place of incarceration in South Carolina would have included two round-trip tickets each for two state troopers (one round-trip ticket to pick up Midgett and one round-trip ticket to return Midgett to South Carolina), at a cost of $1,800 to $2,500 per ticket. Additionally, the time it would take to transport Midgett would total twelve officer days. The trial court found that the cost and inconvenience of transporting Midgett were "very substantial." Judge Gonzalez also found that the presence of two court security personnel would be required at all times in court and that delaying the trial until Midgett was released from custody was not a viable option.

Judge Gonzalez found that allowing Midgett to participate telephonically would not substantially prejudice his claim. Judge Gonzalez found that Midgett's physical presence was not essential for a just disposition where Midgett could participate both through an audio-visual deposition and telephonic participation at trial. Judge Gonzalez's disposition of Midgett's request to be transported from South Carolina to personally appear at trial was therefore not an abuse of discretion.

### D. The Superior Court Did Not Err in Finding Midgett Failed To Meet His Burden in His Negligence Action.

██ Midgett argues that the trial court erred in finding that he did not meet the burden of proof on his negligence claim. Midgett also states that the officers' deviation from the standard operating procedures (SOPs) was evidence of negligence.

Midgett needed to prove that it was more likely than not (1) that the defendants were negligent, (2) that the negligence was a legal cause of Midgett's harm, and (3) that Midgett was actually harmed. Judge Gonzalez found that, based on evidence the court found credible, Midgett was the initial aggressor in the confrontation between Midgett and Inmate Smith. He also found that Midgett's injury was the foreseeable consequence of his aggressive conduct and that there was no evidence that the officers who separated the two inmates used a degree of force beyond what was necessary to separate Midgett and Inmate Smith.

██ Judge Gonzalez found the testimony of Officers Smith and Augafa to be more credible than the testimony of Midgett and other inmates. We give due regard to the "opportunity of a trial judge to weigh the credibility of witnesses."[27] Officer Augafa testified that Midgett, sounding angry and holding a squeegee,[28] confronted Inmate Smith. Officer Augafa testified that he was aware that some officers encourage inmates to fight but that did not occur this time. Rather, Officer Augafa stated, Midgett started the fight.

Officer Smith also testified that Midgett was the aggressor. Officer Smith stated that Midgett rushed down towards Inmate Smith when Inmate Smith exited his cell saying "Come on," and that Midgett was using the squeegee as a weapon, acting as the aggressor during the incident.

Given the testimony of Officers Smith and Augafa and the special ability of the trial court to judge the credibility of the witnesses, the trial court did not err in finding

---

**25.** Zitter, *supra* note 23, at 1068–73 (citing cases from Arizona, California, Florida, Illinois, Louisiana, Michigan, Missouri, Nebraska, New York, North Dakota, Ohio, Pennsylvania, Tennessee, Washington, West Virginia, and Wisconsin).

**26.** Alaska R. Civ. P. 99(a) states, in part:

The court may allow one or more parties, counsel, witnesses or the judge to participate telephonically in any hearing or deposition for good cause and in the absence of substantial prejudice to opposing parties.

**27.** *Barios v. Brooks Range Supply, Inc.*, 26 P.3d 1082, 1085 (Alaska 2001).

**28.** Following a disciplinary hearing concerning this incident, the Disciplinary Committee indicated in its report that Midgett was "armed with an altered squeegee" when he approached Smith.

that Midgett failed to meet his burden in proving that the defendants acted negligently.

 Midgett also apparently argued that the officers' failure to handcuff Inmate Smith, a violation of Cook Inlet's SOPs, was negligence *per se*. But Judge Gonzalez correctly observed that Midgett still had to show that the violation was the legal cause of his injury. As Midgett failed to show the causal connection between the violation · of the procedures and his injury, Judge Gonzalez found that Midgett did not meet his burden of proof. Judge Gonzalez pointed to his finding that Midgett was the aggressor in the action; therefore, if Inmate Smith had been handcuffed, Judge Gonzalez found that Midgett would merely have attacked someone who would have been unable to protect himself. As Judge Gonzalez's finding that Midgett was the aggressor was not clearly erroneous, he did not err in concluding that Midgett did not carry his burden of proof on the negligence *per se* claim.

### E. The Superior Court Did Not Err in Dismissing Midgett's Breach of Contract Claim.

 Midgett argues that the superior court erred in dismissing his breach of contract claim, as an inmate has a right to expect prison officials to follow the policies and regulations of the prison. Judge Gonzalez held that "[t]he evidence presented at trial does not support a cognizable cause of action against these defendants on the theor[y] of breach of contract . . . , therefore [it is] dismissed." However, on the first day of trial, Judge Gonzalez had granted summary judgment to the defendants on the breach of contract claim. As Judge Gonzalez dismissed the claim prior to the beginning of trial and did not hear any evidence on it during trial, we read his findings and conclusions as stating that the breach of contract claim was dismissed with his grant of summary judgment to the defendants.

 The parties acknowledged that Officers Smith and Augafa did not follow Cook Inlet's SOPs when they brought Inmate Smith out of his cell. As the parties stipulated to not following this SOP during litigation of the motions for summary judgment, Judge Gonzalez only had to determine if the SOP constituted a contract between Cook Inlet and Midgett. To establish the existence of a contract, four elements must be shown: (1) an offer that encompasses the agreement's essential terms; (2) unequivocal acceptance; (3) consideration; and (4) mutual intent to be bound.[29]

The SOPs promulgated by Cook Inlet do not constitute a contract between Cook Inlet and Midgett. In 1990, the Commissioner of the Department of Corrections established a policy for SOPs.[30] Under this policy, each correctional facility develops and maintains its own SOPs in order to implement Department of Corrections policies.[31] Therefore the SOPs were neither implemented after consultation with Midgett nor did Midgett agree to their terms. Without an agreement and acceptance between Cook Inlet and Midgett, there can be no contract upon which Midgett can base a breach of contract claim. Judge Gonzalez did not err in dismissing Midgett's breach of contract claim.

### F. The Superior Court Did Not Err in Dismissing Midgett's Medical Malpractice Claim.

 Midgett argues that the superior court erred in dismissing his medical malpractice claim. Judge Gonzalez held that in Midgett's amended complaint, Midgett asserted a cause of action for medical malpractice. Judge Gonzalez stated that because "[t]he evidence presented at trial [did] not support a cognizable cause of action against these defendants" on that theory, the claim was dismissed.

 Given that there was substantial evidence adduced at trial on Midgett's medical malpractice claim, Judge Gonzalez's dismissal of it is best characterized as a finding that Midgett failed to carry his statutory burden on the claim. Under AS 09.55.540, a plaintiff

**29.** *Sykes v. Melba Creek Mining, Inc.,* 952 P.2d 1164, 1167 (Alaska 1998).

**30.** *Mathis v. Sauser,* 942 P.2d 1117, 1123 (Alaska 1997).

**31.** *Id.*

in a medical malpractice action must (1) establish a standard of care, (2) show that the defendant failed to exercise this standard of care, and (3) establish that the failure was the proximate cause of the defendant's injuries.[32] We have held that, where negligence is not evident to lay people, the plaintiff in a medical malpractice action must present expert testimony to establish the claim.[33]

The only medical testimony presented by Midgett at trial was that of Dr. Christopher Horton, the orthopedist who treated Midgett. Dr. Horton testified that the air cast Midgett was initially fitted with immobilized his foot and that, with the use of crutches, his fracture, which had not displaced, would heal properly. Dr. Horton further testified that it was Midgett's walking on his leg, against medical advice, that resulted in Midgett's ankle requiring surgery. Dr. Horton testified on cross examination by the state that, given the amount of swelling around the ankle, the physician's assistant's use of an air cast was proper, as a hard cast could have caused permanent damage. He also testified that Midgett told him he had been bearing weight on his foot, against doctor's orders. As Midgett did not present any evidence showing that the air cast contributed to his injury or to dispute the evidence that it was Midgett's walking on his ankle that caused the more severe injury requiring surgery, the superior court did not err in dismissing Midgett's claim for medical malpractice.

## V. CONCLUSION

Because the superior court did not err in any respect, we AFFIRM the superior court's decision.

**32.** AS 09.55.540(a) states:

In a malpractice action based on the negligence or wilful misconduct of a health care provider, the plaintiff has the burden of proving by a preponderance of the evidence
(1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;

(2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and
(3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

**33.** *Kendall v. State, Div. of Corr.,* 692 P.2d 953, 955 (Alaska 1984) (citing *Clary Ins. Agency v. Doyle,* 620 P.2d 194, 200 (Alaska 1980)).