NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| LAWRENCE E. VOGLTANZ JR., | ) |
| | ) Supreme Court No. S-17675 |
| Appellant, | ) |
| | ) Superior Court No. 3PA-17-02011 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STACY ARLEEN STINSON, | ) AND JUDGMENT[*] |
| | ) |
| Appellee. | ) No. 1835 – July 7, 2021 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Lawrence E. Vogltanz Jr., pro se, Wasilla, Appellant. Notice of nonparticipation filed by Jennifer Wagner, Seaver & Wagner, LLC, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I.    INTRODUCTION

Following a property division trial, the superior court determined that a divorcing couple's residence — their only significant asset — was marital property. The court awarded the home to the husband on condition that he make monthly equalization payments to the wife; if he failed to make payments, the wife could sell the home without his consent. The husband made no payments, and the court attempted to effectuate the property division order by ordering the home's sale. When the husband interfered with

---

[*]    Entered under Alaska Appellate Rule 214.

the wife's attempts to market and sell the home, the court found him in contempt, ordered him to leave the home, and issued a writ of assistance authorizing the police to help with his removal.

The husband appeals. He contends that the court abused its discretion by failing to continue the show cause hearing on the motion to hold him in contempt; erred by failing to appoint him counsel during the proceedings to enforce the property division order; and abused its discretion by issuing the writ of assistance. He also contends that the superior court master who heard a motion to enforce the property division order was biased against him. We conclude that the court did not abuse its discretion or err and that there is no evidence of judicial bias. We therefore affirm the superior court's orders.

## II.    FACTS AND PROCEEDINGS

### A.    Background

Lawrence E. Vogltanz Jr. and Stacy Stinson were married in December 2010. They purchased a home a month later, titled solely in Vogltanz's name, but soon transferred ownership to a jointly owned trust, with their children as the trust's beneficiaries. In 2016, in the process of refinancing the home, the parties removed it from the trust and titled it in both their names as tenants by the entirety.

Stinson filed for divorce in August 2017. An attorney appeared for Stinson pro bono, and the court appointed counsel for Vogltanz under Alaska Administrative Rule 12(e)(1),[1] identifying him as "potentially a vulnerable adult." The court held a trial in October 2018 on the division of marital property. Following trial the court divided the marital estate 55/45 in favor of Stinson. It also found that each party had "significant health issues and live[d] on a fixed income" and that neither was "able to work or

---

[1]    The rule allows the court to appoint counsel "for an indigent person" when "in the opinion of the court [the appointment] is required by law or rule."

increase their income." It found that Vogltanz received Social Security and Veterans' Administration disability income totaling $2,255 per month, while Stinson received $904 per month in Supplemental Security Income. The court allocated the parties' motor vehicles, pets, financial accounts, and other disputed assets, but its primary focus was on the parties' home, valued at $280,000.

The court first found that the home was a marital asset, rejecting Vogltanz's arguments that it was his alone. The court cited the "*bright line* demarcation that all property acquired during marriage is marital property,"[2] but it also relied on a number of factual findings:

> a. The home was purchased during the marriage;
>
> b. It is likely that the entire downpayment for the home came from both parties' premarital funds given how soon after the marriage the home was purchased;
>
> c. The parties lived in the home as their sole residence throughout the marriage;
>
> d. While purchased in [Vogltanz's] sole name, protecting [Stinson's] disability benefits was at least part of the reason that this occurred;
>
> e. Within three months of purchase, the home was transferred into a jointly held trust for the benefit of both parties' children. The home has been jointly titled ever since;
>
> f. Funds from refinancing the home were deposited into a jointly held bank account;
>
> g. The mortgage was paid from a jointly held bank account; and
>
> h. [Stinson] used her disability benefits to make thousands of dollars' worth of improvements on the home.

---

[2]     *Lewis v. Lewis*, 785 P.2d 550, 558 (Alaska 1990) (emphasis in original).

Noting that Vogltanz "want[ed] to remain in the home and [did] not want to sell" it, the court awarded him the home and the mortgage, but with conditions necessary to accomplish the 55/45 property division. The court valued the marital estate at $153,714 and observed that Vogltanz was receiving approximately that amount in assets and debts while Stinson received little of value. Vogltanz was therefore ordered to make an equitable payment to Stinson totaling $85,043, to be made in monthly payments of $400. If he fell more than three months behind, Stinson could sell the home for its fair market value without Vogltanz's consent. Stinson's name would remain on the home's title until she received the full amount Vogltanz owed her. If a forced sale were necessary, Stinson would first be fully compensated from the proceeds; Vogltanz would receive any remainder.

Vogltanz's court-appointed attorney was allowed to withdraw shortly after the court issued its findings.

### B.    Current Proceedings

In February 2019 Stinson filed a motion to enforce the property division, alleging that Vogltanz had failed to make a single equalization payment and was actively interfering with her attempts to collect her personal property from the marital home. The superior court referred the motion to a magistrate judge sitting as a superior court master, who scheduled a hearing for April 23. On the day of the hearing Vogltanz asked the court to appoint him another attorney, but the master denied his request.

The master's report, issued May 16, found that Vogltanz had not made any equalization payments to Stinson; that he "clearly [did] not plan on making the equalization payments"; and that his excuse — "that he was not aware of the court order" — was "not credible." The master recommended that the superior court order that Vogltanz be given about four months "to make other housing arrangements," at which point Stinson could place the house on the market. The master further advised: "If

[Vogltanz] refuses to cooperate with sale of the house, it may be necessary to evict him. Hopefully that will not be necessary."

The superior court issued an order on June 12 authorizing Stinson to sell the home without Vogltanz's consent. The order specifically authorized a realtor of Stinson's choice to have access to the home at certain hours of the day to facilitate the sale and show it to prospective buyers. The order also warned Vogltanz that he would be sanctioned if he were to "interfere[] with the sale of the home or take[] actions to sabotage the home itself or a potential sale" and that the sanctions could include "be[ing] ordered to vacate the premises while the home is on the market." In July the court issued a writ of assistance so that Stinson could have the help of the police, if necessary, to recover items of furniture that had been awarded her in the property division.

Vogltanz filed a number of motions over the next few months, all containing similar attacks on the merits of the 2018 property division and the performance of his appointed counsel, including: a motion for a mistrial, a motion for a new trial, a motion for relief from judgment under Alaska Civil Rule 60(b), a motion to set aside the property division, and multiple motions to reconsider. All the motions were denied. The court eventually advised that Stinson would not be required to respond to any further motions by Vogltanz asking "the court to alter, void, set aside (or similar request) an order of this court" unless the court asked for a response, and that any such motions filed by Vogltanz would be deemed denied if the court did not rule on them within 30 days of their filing.

In September Stinson filed a motion asking for an order to show cause why Vogltanz should not be held in contempt for violating the June order authorizing the sale of the home. She alleged that when she arrived with a realtor Vogltanz blocked entry, called the police on them, and threatened to damage the house. She also alleged that he had filed two petitions for domestic violence protective orders "in an attempt to stop her

from receiving her court-ordered share of the marital estate." The court scheduled a show cause hearing for late October.

Vogltanz filed a "Notice of Unavailability" on October 8, asserting that because of "various upcoming surgeries and recovery periods" he would not be available until mid-December. The court nevertheless went ahead with the show cause hearing as scheduled on October 29. The court acknowledged Vogltanz's notice of unavailability, also noting that he had not moved for a continuance. Stinson pointed out that Vogltanz had not provided any specifics about his purported medical issues, and she argued that he was misrepresenting them to delay proceedings, as she alleged he had done in the past. The court ultimately found that Vogltanz did not "intend to willingly vacate that property" and asked Stinson's counsel to submit a proposed writ for the court's signature.

Vogltanz filed a second notice of unavailability in December claiming that he had suffered a "[setback] to [his] surgical recovery" and would be unavailable until midway through February 2020. On December 20 the court issued a written order on Stinson's motion for order to show cause. Finding that Vogltanz had violated the June order "by knowingly and willfully interfering with the sale of the home," the court found him in contempt and ordered that he vacate the home within three days so that Stinson could proceed with the sale without interference. At the same time the court signed another writ of assistance, giving Stinson the help of the police to remove Vogltanz from the home.

We denied Vogltanz's motion for an emergency stay of the December writ. In February 2020, with police assistance, Stinson succeeded in removing Vogltanz from the home.

Vogltanz appeals the December 2019 order and writ of assistance.

## III.  STANDARD OF REVIEW

"We will not disturb a trial court's refusal to grant a continuance unless an abuse of discretion is demonstrated.  An abuse of discretion exists when a party has been deprived of a substantial right or seriously prejudiced by the lower court's ruling."[3]

"We review constitutional questions, including due process and equal protection, de novo, and we 'will adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[4]  The decision to appoint counsel in a civil case, because of its constitutional nature, is reviewed de novo.[5]

"We review a superior court's issuance of an order permitting the sale of property using the same abuse of discretion standard that we employ when reviewing other superior court orders."[6]  "We find an abuse of discretion 'when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling.' "[7]

"We review de novo the question of whether a judge appears biased, which is assessed under an objective standard."[8]

---

[3]  *Wagner v. Wagner*, 299 P.3d 170, 173 (Alaska 2013) (quoting *Azimi v. Johns*, 254 P.3d 1054, 1059 (Alaska 2011)).

[4]  *Dennis O. v. Stephanie O.*, 393 P.3d 401, 405-06 (Alaska 2017) (internal footnote omitted) (quoting *Jerry B. v. Sally B.*, 377 P.3d 916, 924-25 (Alaska 2016)).

[5]  *Id.* at 405 n.12.

[6]  *Watega v. Watega*, 143 P.3d 658, 663 (Alaska 2006).

[7]  *Id.* (quoting *Peter Pan Seafoods, Inc. v. Stepanoff*, 650 P.2d 375, 378-79 (Alaska 1982)).

[8]  *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (quoting *Wells v. Barile*, 358 P.3d 583, 588 (Alaska 2015)).

## IV.   DISCUSSION

Vogltanz makes four arguments that relate to the December 2019 order on appeal.[9]  First, he argues that the superior court should have delayed the show cause hearing because of his notice of unavailability.  Second, he argues that the superior court master should have appointed him another attorney when he asked for one in April 2019.  Third, he argues that the superior court erred by issuing the December writ of assistance.  And fourth, he contends that the master was biased against him.[10]  We conclude that none of his arguments have merit.

### A.   The Superior Court Did Not Abuse Its Discretion By Proceeding With The Hearing To Show Cause Despite Vogltanz's Absence.

Vogltanz first argues that the superior court erred by proceeding with the October 29 show cause hearing despite the fact that he had filed a notice of unavailability citing his medical issues.  We interpret his argument to be that the court should have

---

[9]   Vogltanz makes a number of other arguments that are actually untimely challenges to the underlying property division, decided in November 2018 and not appealed.  We consider only the arguments related to the December 2019 order.  *See Maxwell v. Sosnowski*, 420 P.3d 1227, 1232 (Alaska 2018) (declining to consider challenges to property division order that was not timely appealed).

[10]   Vogltanz also cites a court-ordered suspension of evictions due to the COVID-19 pandemic.  We assume he is referring to the Presiding Judge Statewide Administrative Order Governing Relaxation and Suspension of Various Court Rules Based on the Covid-19 Pandemic, which went into effect on March 23, 2020, and stayed eviction hearings.  The federal government also issued an eviction moratorium on March 27 when Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 15 U.S.C. § 9058(b).  Both of these events occurred over a month after Vogltanz was removed from his home pursuant to the writ of assistance and thus, even if otherwise applicable, could have had no effect on his case.

construed his notice as a request to continue the hearing and should have granted it.[11] Whether to grant a continuance is committed to the superior court's discretion.[12]

"Alaska Rule of Civil Procedure 40(e) provides that unless otherwise permitted by the court, a request for a continuance must be made at least five days prior to the date set for trial and 'supported by the affidavit of the applicant setting forth all reasons for the continuance.' "[13] A party's assertion that he is ill or in need of medical care does not necessarily justify a continuance.[14] And Vogltanz did not file an affidavit or any other supporting documents with his notice of unavailability. However, his notice stated that he had "already been thr[ough] 12 major [medical] procedures since July 2017" and "[j]ust in the last week of October 2019 alone [he had] a post[-]op from a major surgery earlier plus a [pre]-op and throat surgery that week all before Thursday." As a self-represented litigant, Vogltanz was entitled to some procedural leeway. "[W]here a self-represented litigant is obviously attempting to accomplish a discrete action and his procedural failing is the result of 'a lack of familiarity with the rules rather than gross neglect or lack of good faith,' the superior court retains an obligation to

---

[11]    "[W]e consider pro se pleadings liberally in an effort to determine what legal claims have been raised." *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012).

[12]    *Wagner v. Wagner*, 299 P.3d 170, 173 (Alaska 2013) (quoting *Azimi v. Johns*, 254 P.3d 1054, 1059 (Alaska 2011)).

[13]    *Id.* (quoting Alaska R. Civ. P. 40(e)(2)).

[14]    *See Azimi*, 254 P.3d at 1060 ("A continuance may be appropriate where a party is ill, but only to the extent that the illness prejudices the party's case by preventing him from adequately preparing for or participating in trial; 'illness of a party does not *ipso facto*' require that a continuance be granted." (quoting *Siggelkow v. Siggelkow*, 643 P.2d 985, 987 (Alaska 1982))).

inform that litigant of the proper procedure for that action."**15**  We assume for purposes of this discussion that the superior court should have read Vogltanz's notice of unavailability as a request that the October 29 hearing be continued.

However, there were strong countervailing arguments for holding the hearing as scheduled.  The first is the effect of further delay on Stinson's rights.  The hearing date had been set nearly a month in advance.  Stinson — with her own health problems, living on a fixed income less than half of Vogltanz's, and having no significant assets of her own — had been awarded monthly payments of $400 nearly a year before and had yet to receive even one.  The court had accordingly ordered the forced sale of the home in June, but Vogltanz repeatedly interfered to the extent that Stinson's realtor considered it an unsafe situation for contractors, inspectors, appraisers, and potential buyers.  Both the master and the superior court had found that Vogltanz had no intention of complying with the property division order.

The record also shows Vogltanz's history of meritless obstruction.  In the court's September 30 order it had noted Vogltanz's repeated filing of frivolous motions that rehashed issues already decided, the only purpose of which was "to avoid complying with previous court orders" while "ris[ing] to the level of harassment of" Stinson.  And finally, Stinson argued at the hearing — and the court could reasonably have concluded — that Vogltanz exaggerated the seriousness of his health issues as one more means of delaying enforcement of the property division order.

---

**15**     *Bush v. Elkins*, 342 P.3d 1245, 1253 (Alaska 2015) (quoting *Wagner*, 299 P.3d at 174)).

Given these circumstances, we conclude that the superior court did not abuse its discretion by declining to continue the show cause hearing because of Vogltanz's notice of unavailability.[16]

**B.     The Superior Court Master Did Not Violate Vogltanz's Due Process Rights By Denying His Request For An Appointed Attorney At The April Hearing.**

Vogltanz's court-appointed attorney — appointed under Administrative Rule 12(e)(1) on the ground that Vogltanz was "potentially a vulnerable adult" — withdrew shortly after the court issued its property division order in November 2018, and Vogltanz was self-represented thereafter. On April 23, the day of the master's hearing on Stinson's motion to enforce the property division order, Vogltanz filed a motion for another court-appointed attorney, listing four reasons: (1) he was "a vulnerable adult with physical health issues"; (2) "the other party has a pro bono attorney"; (3) "the court previously appointed an attorney who withdrew 21 November 2018"; and (4) he could not afford an attorney because he "live[d] on disability [payments]." The master denied the motion orally at the hearing.

In a later written order denying Vogltanz's motion for reconsideration, the master explained:

> The issues in dispute were straightforward. [Vogltanz] presented his case in a clear and competent manner. It was

---

[16]     We note one concern. When deciding to go ahead with the hearing, the court observed that Vogltanz "knows how to call in because he's done that before and [the] line has not changed." But Vogltanz contended at oral argument on appeal that he had attended all prior proceedings in person, had never called in instead, and did not know how to do it. Nothing in our record contradicts his assertion; on the other hand, nothing indicates an effort on his part to contact the court about the hearing beyond the filing of his notice three weeks earlier. But given Vogltanz's notice about claimed medical issues, the court ideally should have made an effort to contact him on the day of the hearing to allow his telephonic participation.

not necessary to appoint counsel for him to represent his interests. There is no right to counsel due [solely] to the other party having a pro bono attorney. *See Dennis O. v. Stephanie O.*, 393 P.3d 401 (Alaska 2017).

On appeal Vogltanz does not explain why the master erred by denying his request for another appointed counsel, and we find the master's explanation sufficient to justify his decision. First, this suit does not fit within one of the categories in which an indigent civil litigant has an identified right to appointed counsel: "termination of parental rights, child custody, paternity suits, and civil contempt proceedings for nonpayment of child support."[17] By citing Vogltanz's potential vulnerability when making its initial appointment of counsel at the case's outset, the superior court was presumably relying on its authority to appoint counsel by "relying on the principles that justify appointment of counsel in criminal proceedings."[18]

But things had changed since the beginning of the case. Significantly, the issues had narrowed from the property division trial to the enforcement of one aspect of it; as the master noted, "[t]he issues in dispute were straightforward," making the need for counsel less urgent. And the master observed after the fact that Vogltanz "presented his case in a clear and competent manner." Months of litigation had demonstrated that Vogltanz was not as much in need of legal assistance as the superior court's initial appointment had assumed.

The master was also correct to note that Stinson's representation by pro bono counsel did not mean that Vogltanz had a reciprocal due process right to appointed

---

[17]     *Barber v. Schmidt*, 354 P.3d 158, 161 (Alaska 2015) (quoting *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1111 (Alaska 2002)).

[18]     *Id.* (quoting *Midgett*, 53 P.3d at 1111).

counsel. Vogltanz's interests in marital property are primarily economic.[19] Even where a litigant's interests are significantly higher — such as the interest in the "custody of one's children" — we have held that "[o]n balance self-represented indigent parents facing opposing parents represented by private counsel are not, as a class, deprived of due process rights solely because they do not have counsel."[20]

Finally, even if Vogltanz's due process rights were implicated here, we could not conclude that he was entitled to appointed counsel in the absence of a showing that the deprivation actually prejudiced him.[21] He makes no such showing. The court did not err by denying Vogltanz's request for appointed counsel during the enforcement proceedings at issue.

### C. The Superior Court Did Not Abuse Its Discretion By Issuing The Writ Of Assistance.

Vogltanz argues that the December 2019 writ of assistance, issued to help Stinson enforce the court's earlier orders about the disposition of the marital home, effectively "forced [him] to the streets in the middle of winter" during "20 degree temperatures and two feet of snow" and without a "safe place to go" during the COVID-19 pandemic. He also alleges that execution of the writ by six Alaska State Troopers,

---

[19] *Id.* at 162 (holding that interest in possession of property is economic and therefore "insufficient to require the appointment of counsel as a matter of due process").

[20] *Dennis O. v. Stephanie O.*, 393 P.3d 401, 409 (Alaska 2017); *see also Midgett*, 53 P.3d at 1111-12 (noting that litigant's interest in financial recovery "is not nearly as compelling as the right to have children, the right to custody of children, or the right to oppose the deprivation of liberty").

[21] *Dennis O.*, 393 P.3d at 410 (finding no unconstitutional deprivation of counsel in custody modification proceeding in part because of father's "failure to identify any plausible way that [he] was prejudiced" by lack of representation) (alteration in original).

"summoned with [Stinson's] false allegations that [Vogltanz] had guns," constituted excessive force. Lastly, he argues that his forced removal from the home cut off his access to needed medical supplies. We interpret these arguments as challenges to the superior court's exercise of discretion in deciding to issue the writ of assistance.

A superior court clearly has authority to award the marital home to one party or the other when entering a judgment on the disposition of property in divorce.[22] And this authority includes the power of enforcement; the court may force a sale of the home when necessary to effectuate the terms of the property division.[23] Whether it is necessary to force a sale is generally a matter for the superior court to decide in the exercise of its discretion.[24]

The terms of the November 2018 property division order were clear: Vogltanz could stay in the home as long as he paid Stinson "her share of the marital estate in an amount of not less than $400/month." If he fell more than three months behind, then Stinson would be authorized "to sell the home for fair market value without [Vogltanz's] consent." Although Vogltanz has asserted at various times that he was unaware of these terms of the property division order, the master rejected that argument as not credible; in any event, Vogltanz continued to resist paying the amounts owed long

---

[22]     *See* AS 25.24.160(a)(4)(F), (e)(4) (requiring court to consider desirability of awarding family home to spouse with primary physical custody of children).

[23]     *See Guerrero v. Guerrero*, 362 P.3d 432, 434, 436-37, 446 (Alaska 2015) (affirming court's order forcing sale of home when wife failed to comply with property division order requiring her to refinance and remove husband's name from mortgage within 18 months).

[24]     *See Worland v. Worland*, 240 P.3d 825, 827, 829-30 (Alaska 2010) (finding no abuse of discretion in superior court's denial of motion to vacate clerk's deed authorizing wife to sell marital residence after husband's failure to remove her name from mortgage and pay her 60% of home's equity as required by property settlement).

after he was forced to acknowledge the order's existence. The master found that Vogltanz had no intention of making any of the required equalization payments to Stinson, and the superior court found that he had no intention of ever leaving the home voluntarily. Vogeltanz does not dispute these findings. He suggests no means by which the court could have enforced its property division order short of the steps it took, culminating in the December 2019 writ of assistance.

We conclude that the superior court did not abuse its discretion by issuing the writ of assistance necessary to effectuate its prior orders.

### D. Vogltanz Does Not Show That The Master Was Biased Against Him.

Vogltanz appears to argue that the superior court master who presided over the April hearing demonstrated bias against him by refusing to accept documents related to Vogltanz's payment for the home, denying his request for new court-appointed counsel, and rejecting information on earthquake damage to the home. He argues the master made these rulings simply because "it was all too '[i]nconvenient.' "

Bias cannot be inferred from adverse rulings, and a party claiming bias must prove "that the court formed an unfavorable opinion of the party from extrajudicial information"[25] or that "a judicial officer hear[d], learn[ed], or d[id] something intrajudicially so prejudicial that further participation would be unfair."[26] Our review of the record reveals no such basis for a finding of judicial bias.

## V. CONCLUSION

The superior court's December 2019 order and writ of assistance are AFFIRMED.

---

[25] *Downs v. Downs*, 440 P.3d 294, 299-300 (Alaska 2019).

[26] *Id.* at 300 (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part)).