**Habib AZIMI, Appellant,**

v.

**David R. JOHNS, Appellee.**

No. S–13407.

Supreme Court of Alaska.

May 27, 2011.

Habib Azimi, pro se, Anchorage, Appellant.

Susan D. Mack, Call, Hanson & Kell, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Habib Azimi was involved in a car accident and subsequently brought a pro se personal injury suit against the other driver, David Johns. At a pretrial conference, Azimi requested a continuance on medical grounds. The superior court denied the request, finding no evidence that Azimi was unable to participate at trial.

Johns subsequently filed a motion for partial summary judgment on Azimi's wage loss claim, arguing Azimi had not produced evidence of damages, and a motion to dismiss Azimi's complaint based on Azimi's lack of exhibits and expert witnesses.

At trial call, Azimi again requested a continuance of the trial, arguing that trial preparation could jeopardize his health. The superior court denied the continuance because Azimi did not present evidence that trial preparation would endanger his health. The superior court also granted Johns's motion for partial summary judgment and motion to dismiss the complaint. Final judgment was entered in favor of Johns.

The primary issues on appeal are: (1) whether the superior court abused its discretion by denying Azimi's requests for continuance; (2) whether the superior court abused its discretion by failing to provide adequate guidance to Azimi under Alaska's lenient standards for pro se litigants; (3) whether the superior court correctly granted Johns's motion for partial summary judgment; and (4) whether the superior court abused its discretion by dismissing Azimi's complaint. We affirm the superior court's decision to grant Johns's motion for partial summary judgment and we hold that it was not an abuse of discretion for the court to deny Azimi's requests for continuance. We reverse the superior court's order dismissing the case, and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Habib Azimi, a cab driver, and David R. Johns were involved in a car accident at the intersection of Minnesota Drive and Benson

Boulevard in Anchorage on May 28, 2005. Azimi's four cab passengers and one additional bystander reported that Johns entered the intersection on a red light and collided with Azimi's van. Azimi received payments totaling $4,037.27 from Johns's insurance carrier, Geico, for property damage to his vehicle. On May 21, 2007, Azimi filed a complaint against Johns claiming that the collision caused him physical injury and psychological problems, including post-traumatic stress disorder (PTSD). He requested a judgment in excess of $100,000. On September 28, the same day Johns answered Azimi's complaint, Azimi filed a motion for expedited consideration requesting that the court stay the case so he could travel to the Persian Gulf to obtain dental care. He told the court he would be leaving on October 2, 2007.

Johns's attorney opposed the motion for stay on the grounds that Azimi had refused to identify his treating physicians, sign a medical authorization, or produce tax returns upon Johns's request. On the morning of October 2, 2007, the superior court held a hearing on the motion for expedited consideration. The court granted Azimi's request to stay the proceedings for six months but ordered Azimi to provide the requested information to Johns's attorney and sign any necessary releases before leaving the state. The court also instructed Azimi to identify his health care providers so Johns's attorney could contact them. Azimi was able to identify two doctors by name but could not at that time recall the names of the other physicians he had visited.

On March 27, 2008, the court received a letter sent by Azimi from Iran. Azimi reported that he had been consulting with doctors in Tehran. But according to Johns, Azimi still had not provided him with the names of his other medical providers, and Johns's attorney sent Azimi a letter on June 6, 2008 warning Azimi of his client's intent to request a status hearing and move for dismissal of the case based on Azimi's failure to identify his past medical care providers and

his inability to actively participate in the litigation.

The superior court held a status hearing on July 14, 2008, which Azimi attended in person. Johns's attorney informed the court that he continued to encounter difficulty obtaining Azimi's medical records but would be prepared for trial in January 2009. The court advised Azimi about the litigation process, explaining that he had a right to receive copies of any records Johns's attorney obtained and outlining the steps in the trial process, including the role of witnesses and medical records. The court also encouraged Azimi to hire a lawyer and emphasized the importance of meeting court deadlines, particularly the deadline for expert witnesses. Azimi expressed doubts that he would be prepared for trial in January because he was still looking for a psychiatrist and an attorney, and also because he was homeless and temporarily living with friends. Citing the fact that the case had been stayed for six months already and cautioning Azimi "If you're not ready, we're going to go forward anyway," the court scheduled trial for January 26, 2009 with a trial call on January 21. The superior court also scheduled a settlement conference for the parties with another superior court judge.[1] A summary of pre-trial deadlines was issued to the parties; among other things, the list included deadlines for preliminary and final witness lists, depositions of expert witnesses, and trial briefs.

Johns filed a motion for partial summary judgment regarding wage loss on December 7, 2008. He argued that Azimi's failure to produce documentation of his earnings prior to the accident made it impossible for him to prove wage-related damages with reasonable certainty.[2]

The superior court held another pretrial status hearing on December 19, 2008. Azimi reported that he was "in very, very bad shape in every way" and requested that the trial be postponed. The superior court told

---

1. The conference was apparently unsuccessful.

2. Although Azimi had signed releases allowing Johns to obtain his tax information from the IRS,

records showed that Azimi had not declared income or filed tax returns since 1994.

Azimi that a motion for continuance would need to be made in writing. The court expressed concern that Azimi did not appear to be keeping up-to-date with pretrial deadlines and warned him "[y]ou've got to do that."

Ten days later, the superior court held another pretrial conference. At the conference, Azimi submitted a letter from Dr. Sean Cardinal, who had examined or consulted with Azimi at the Providence Family Medicine Center in Anchorage. Dr. Cardinal reported that Azimi had been diagnosed with sixth cranial nerve palsy based on an MRI performed in Iran, and that this condition caused him to experience double vision. Dr. Cardinal noted that "[t]his condition has mostly resolved however he continues to have double vision when he visually concentrates for long periods of time (such as reading)." Dr. Cardinal planned to do an MRI scan of Azimi's brain if his symptoms worsened, but wrote that "for the time being he should gradually recover his ability to read within a year or two." At the pre-trial conference, Azimi again orally requested a continuance based on the health problems described in the letter. He also confirmed that he was claiming the cranial nerve palsy was caused by the accident. Azimi stated that the only witness he had to testify to a connection between the cranial nerve palsy and the accident was a radio call-in psychologist in California with whom he had had one telephone conversation. Johns's attorney informed the superior court that Azimi had just that day "long after the close of discovery" provided him with "trip sheets," i.e., logs of the passengers Azimi had picked up as a cab driver over the course of the past several years. Azimi intended that these records would substantiate his wage loss claim.

The superior court denied Azimi's request for continuance. In reaching this decision, the superior court reasoned that Dr. Cardinal's letter did not indicate Azimi was incapable of attending trial and that a jury trial was unlikely to require visual concentration that could bring on Azimi's double vision symp-

toms. The superior court stated that Azimi did not appear to be "in any way disabled from being able to accurately and articulately express his thoughts and his feelings" and was therefore capable of moving forward with the trial. The court put Azimi on notice that he would need to be prepared for trial or risk dismissal of the case: "I'm going to make you be prepared to go or, if you're not prepared to go we'll have the jury picked and if you don't put on any evidence, I will end up having to dismiss your case."

The superior court determined that Azimi had failed to meet deadlines for filing his preliminary witness list, serving written discovery to Johns's attorney, and preparing jury instructions. But the court told Azimi that he would be allowed to call as witnesses the doctors whose reports had already been disclosed to Johns and that Azimi could testify himself. The court ordered Azimi to identify trial witnesses by January 2 and ordered a final witness list by January 12. Trial call was scheduled for January 21, 2009.

At the close of the December 29 pretrial conference, Azimi attempted to object orally to Johns's December 8 motion, which sought partial summary judgment on the grounds that Azimi could not prove his wage loss claims with sufficient certainty. The court informed Azimi that he would need to file a written opposition by the next day if he wished to object. Azimi did file a one-paragraph opposition the next day; he argued that his trip sheets provided legal and adequate proof of wage loss caused by the car accident.[3]

Johns filed a motion to dismiss Azimi's complaint with prejudice on January 6, 2009. The motion stated that Azimi had informed Johns's attorney's office that he was not going to provide proposed exhibits or proposed jury instructions. The motion argued that Azimi's complaint should be dismissed because Azimi had no experts or exhibits to support his PTSD claim.

On January 21, 2009, the parties appeared for trial call. The superior court began by admonishing Azimi about his continued lack

---

3. This opposition is included in the record and marked as received by a deputy clerk of court. Johns's brief on appeal states that Azimi filed no opposition to the motion for partial summary judgment, but the record includes Johns's reply to the opposition.

of preparation: "I have tried to be very lenient.... But, as I look at the status of this case, I don't believe that you have done what you needed to do to work with the defense.... You don't have exhibits, you don't have jury instructions, you don't have an expert witness." Azimi had provided Johns's attorney with a final witness list, but it consisted largely of Geico representatives, Johns's attorney and his staff, and Azimi's previous attorneys. The list included two, or possibly three, doctors. Johns's attorney represented that he was unable to locate one of those doctors and that the other had no records related to the accident; a third doctor whom Azimi had identified at an earlier hearing had no medical opinion on the accident and had only recently begun treating Azimi.[4] Johns's attorney also argued that the list included no one who could qualify as an expert witness to establish a causal connection between the accident and Azimi's PTSD. Azimi again stated that he needed more time because his mental and physical condition had prevented him from preparing for trial and he had not succeeded in his efforts to retain an attorney. He told the court, "I did my best.... But when it comes to my head, the things that I have to do, it's making it worse.... I don't know what to tell you except to say that my head comes first."

The superior court found that Azimi had not responded with evidence necessary to raise a genuine issue of material fact on the question of lost wages and granted Johns's motion for partial summary judgment. The court then dismissed Azimi's complaint.

On February 26, the superior court entered final judgment in favor of Johns and awarded attorney's fees and costs against Azimi in the amount of $18,897.94. Azimi appeals.

## III. STANDARD OF REVIEW

■■■ We "will not disturb a trial court's refusal to grant a continuance unless an abuse of discretion is demonstrated. An abuse of discretion exists when a party has been deprived of a substantial right or seriously prejudiced by the lower court's ruling."[5] The superior court's decision to dismiss a case with prejudice for failure to follow court orders is likewise reviewed for abuse of discretion.[6]

■■■ "We review the grant of a summary judgment motion de novo, affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law."[7] But we have applied the abuse of discretion standard in reviewing the adequacy of the superior court's notice to pro se litigants regarding summary judgment.[8]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Denying Azimi's Request For A Continuance.

Azimi identifies several factors that he claims impeded his ability to prepare for trial and meet court deadlines, including health conditions (in particular his difficulty concentrating and reading), homelessness, difficulties with winter transportation, and financial

4. Johns's attorney acknowledged that a fourth doctor, Dr. Cardinal, had been brought to his attention a week before trial call, though he apparently was not included on the witness list. Our review of the record indicates that Dr. Cardinal's letter regarding Azimi's health was presented to the court at pretrial conference almost a month before trial call.

5. *House v. House,* 779 P.2d 1204, 1206 (Alaska 1989) (internal quotation marks and citations omitted); *see also Gregoire v. Nat'l Bank of Alaska,* 413 P.2d 27, 33 (Alaska 1966).

6. *See Arbelovsky v. Ebasco Servs., Inc.,* 922 P.2d 225, 227 (Alaska 1996).

7. *Beegan v. State, Dep't of Transp. & Pub. Facilities,* 195 P.3d 134, 138 (Alaska 2008) (citing *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n,* 152 P.3d 460, 465 (Alaska 2007)).

8. *Genaro v. Municipality of Anchorage,* 76 P.3d 844, 847 (Alaska 2003) ("[I]t was an abuse of discretion not to inform [a pro se litigant] of the proper procedure for the action ... she was obviously trying to accomplish, namely, using a Rule 36(b) motion to preclude summary judgment." (internal quotation marks and citations omitted)); *see also Shooshanian v. Dire,* 237 P.3d 618, 622 (Alaska 2010) ("We review for abuse of discretion ... decisions about guidance to a pro se litigant....").

problems. Azimi also notes that he asked for an attorney from the court but was unable to get one appointed because his was a civil case. Johns argues that Azimi failed to demonstrate that his mental and physical condition prevented him from going to trial and therefore he was not entitled to a continuance on the grounds of illness. He also contends that Azimi did not act with due diligence in attempting to retain an attorney. We agree with Johns and therefore hold that the superior court's denial of Azimi's request for continuance was not an abuse of discretion.

### 1. Azimi was not entitled to a continuance based on his medical conditions.

We held in *Siggelkow v. Siggelkow* that the decision whether to grant a continuance must balance competing goals: prompt resolution of litigation on one hand, and a fair opportunity for all parties to present their cases on the other.[9] A continuance may be appropriate where a party is ill, but only to the extent that the illness prejudices the party's case by preventing him from adequately preparing for or participating in trial; "illness of a party does not *ipso facto*" require that a continuance be granted.[10] We have noted that "the presence of the party at trial is oftentimes indicative of whether the denial resulted in prejudice"; that is, if a party is able to be present at trial, the court is less likely to find prejudice.[11] In *Pollard v. Walsh*, for example, a litigant followed a doctor's orders to stay in bed for a period that included the trial date.[12] The Colorado Supreme Court found that the trial court's denial of a continuance under the circum-

stances was an abuse of discretion.[13] By contrast, in *Fejer v. Paonessa*, a litigant claimed to have appeared at trial in violation of doctor's orders and was not granted a continuance; the reviewing court held that "the fact that he appeared, as he asserts, in violation of his physician's orders does not furnish a ground for reversal." [14]

The type of medical evidence provided by the party claiming illness may also influence whether the trial court is within its discretion to deny a continuance. A California appellate court held that the trial court's observations of a litigant was sufficient to deny a continuance where the litigant's claim of illness was unsupported by medical or other proof; the court was not required to have a doctor examine the litigant.[15] Similarly, where a doctor states that a litigant, even if sick, is capable of participating in trial without serious risk to his life or well-being, denial of a continuance has been held not to be an abuse of discretion.[16]

Here, Azimi appeared consistently at pretrial proceedings and the superior court observed him to be "articulate . . . rational and reasonable." Based on the framework described in *Siggelkow*, Azimi's presence and ability to participate in hearings indicated that he was not prejudiced by his illness.[17] Azimi seems to argue that his case was damaged by his inability to "think or . . . concentrate[ ] properly about the case or the court [p]rocedures" as a result of his medical conditions (specifically his double vision). But the letter Azimi presented from Dr. Cardinal did not constitute medical proof that his condition required a delay in trial proceedings. The letter indicated that Azimi had been

---

9. 643 P.2d 985, 987 (Alaska 1982).

10. *Id.* (citing *Kalmus v. Kalmus*, 103 Cal.App.2d 405, 230 P.2d 57, 63 (1951) ("Generally, the denial of a continuance requested on the ground of ill health will be held reversible error only when the applicant suffered prejudice as a result of the denial.")).

11. *Id.* at 987 n. 3 (comparing *Pollard v. Walsh*, 194 Colo. 566, 575 P.2d 411, 412 (1978) (prejudice) with *Fejer v. Paonessa*, 104 Cal.App.2d 190, 231 P.2d 507, 509 (1951) (no prejudice)).

12. *Pollard*, 575 P.2d at 412.

13. *Id.*

14. *Fejer*, 231 P.2d at 509.

15. *People v. Stump*, 14 Cal.App.3d 440, 92 Cal. Rptr. 270, 270–71 (1971).

16. *Burton v. State*, 37 Ala.App. 396, 69 So.2d 477, 480 (1954); *People v. Morris*, 226 Cal. App.2d 12, 37 Cal.Rptr. 741, 744–45 (1964).

17. *Siggelkow v. Siggelkow*, 643 P.2d 985, 987 (Alaska 1982).

diagnosed with sixth cranial nerve palsy and suffered from double vision, a complaint that was "mostly resolved" and reappeared only during periods of intense visual concentration. Dr. Cardinal did not explicitly address Azimi's ability to participate in a trial, yet it was Azimi's burden to show that he would be prejudiced if the trial went forward. The superior court's finding that this jury trial was unlikely to require visual concentration for long periods of time is supported by the record.[18] Given the limited information provided in Dr. Cardinal's letter and the superior court's own observations of Azimi in court, we cannot say it was an abuse of discretion for the superior court to deny Azimi's request to continue the trial.

### 2. Azimi was not entitled to a continuance based on his lack of counsel.

■ Although Azimi did not discuss his lack of an attorney at the December 29 pretrial conference when he orally requested a continuance, his earlier requests to stay the case relied in part on the fact that he had been unable to hire an attorney. As he explained at the July 14 status hearing, "I've been looking [for an attorney] from the beginning and especially last year and I'm still looking ... because it's a mental case ... they don't want to take that." To the extent Azimi argues he was entitled to a continuance because he was unable to find an attorney, his argument is unavailing.

■ There is no general right to counsel in civil cases under the United States or Alaska Constitutions.[19] Further, many litigants successfully represent themselves in civil litigation. We are mindful that it is difficult for lay persons to represent themselves in court, but the superior court was correct to consider that Johns was also entitled to his day in court and that the case had already been stayed for six months at Azimi's request. Further, there was no reason to expect that another continuance would allow Azimi to be any more successful in his efforts to obtain counsel.

We have emphasized that "[a] party who seeks to continue a case for trial must show that he acted with due diligence upon the grounds for which continuance is sought."[20] As Johns notes in his brief, Azimi had over three years to retain a lawyer between the time of the accident and the superior court's denial of his request for a continuance in December 2008. Based on the letters from attorneys that Azimi provided in his excerpt, it appears that Azimi contacted two private firms in 2007, both of which declined to represent him.[21] He also contacted the Alaska Legal Services Corporation and the Disability Law Center of Alaska but neither agency was able to represent him. Azimi did not seek counsel in 2008—the case was stayed for much of that year while Azimi was in Iran—and in 2009, he contacted just one additional private firm prior to the January trial date. Without underestimating the obstacles Azimi faced in finding an attorney to take his case or the difficulties facing indigent litigants generally, we agree with the superior court's conclusion that Azimi was not entitled to a continuance to attempt to retain counsel, primarily because he could not show that a continuance would allow him

---

**18.** Azimi had produced very little pre-trial discovery and designated no exhibits for trial. It appears that the evidence at trial would have mainly consisted of Azimi's own testimony, rather than documentary evidence that might have required sustained visual concentration.

**19.** *McCracken v. State,* 518 P.2d 85, 90 (Alaska 1974). The provision of publicly-funded counsel in some child custody, parental termination, and involuntary commitment cases is a notable exception to this rule. *See, e.g.,* AS 47.30.725(d) (providing right to counsel before involuntary commitment for mental health treatment); *Wetherhorn v. Alaska Psychiatric Inst.,* 156 P.3d 371, 383 (Alaska 2007) (Alaska Constitution's due pro-

cess clause guarantees counsel in involuntary commitment and administration of psychotropic medication proceedings); *Flores v. Flores,* 598 P.2d 893 (Alaska 1979) (holding that an indigent party has the right to court-appointed counsel in a private child custody proceeding in which the other parent is represented by counsel provided by a public agency).

**20.** *Sparks v. Gustafson,* 750 P.2d 338, 341 (Alaska 1988) (citing *Cheek v. Hird,* 9 Kan.App.2d 248, 675 P.2d 935, 937 (1984)).

**21.** One attorney with whom Azimi had met provided him with a draft complaint.

to retain one.[22] The superior court did not abuse its discretion in denying the request to continue trial.

### B. Although The Superior Court Did Not Give Adequate Guidance To Azimi As A Pro Se Litigant, Its Error Was Harmless.

We held in *Breck v. Ulmer* that "the pleadings of pro se litigants should be held to less stringent standards than those of lawyers.... [W]e believe the trial judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish."[23] We later clarified the scope of this obligation by "declin[ing] to extend *Breck* to require judges to warn pro se litigants on aspects of procedure where the pro se litigant has failed to at least file a defective pleading."[24] Azimi argues that the superior court abused its discretion by failing to advise him about how to file affidavits to defeat a motion for summary judgment. We agree that the superior court could have provided Azimi with a more complete explanation of the proper procedure for opposing Johns's motion for summary judgment, but because the court considered the evidence that Azimi should have submitted in the form of affidavits, we hold that any deficiency in the court's explanation was harmless.

### 1. The superior court is obligated to inform litigants of the proper procedure for opposing a motion for summary judgment.

 Johns filed for partial summary judgment on the issue of wage loss on December 8, 2008. The motion was accompanied by a "Notice of Motion" to Azimi, as required under Alaska Rule of Civil Procedure 5(g)(2).[25] The notice stated that the recipient had the right to file a written opposition and provided information on how to serve an opposition. At the December 29 pretrial conference, Azimi had not filed an opposition to Johns's motion, though he had provided Johns's attorney with the trip logs he intended to use to substantiate his claim for lost wages. The court gave Azimi until the following day to file a written opposition, explaining, "You need to read what he's written and respond to the arguments that he's making and if you have any additional arguments, you can make those." Azimi submitted an opposition in which he reiterated that the only available data on his income was in the trip sheets.

Because Azimi did file a pleading, he falls under the stricter requirements articulated in *Breck* rather than those in *Bauman*, and the court was obligated to inform him of "the proper procedure for the action he ... [was] attempting to accomplish."[26] Azimi's failure

---

**22.** Our caselaw has not addressed what it takes to demonstrate "due diligence" in the context of seeking counsel. We do not find it necessary here to specify precisely how much time a court must allow for a litigant to find an attorney, or how many attorneys a litigant must contact to meet his obligation. Regardless of the specific minimum requirements, Azimi's efforts in this case (i.e., contacting only five attorneys or legal service organizations over a three-year span) fall well below the standard of due diligence that might be reasonably expected of a litigant seeking a continuance.

**23.** 745 P.2d 66, 75 (Alaska 1987); *see also Genaro v. Municipality of Anchorage*, 76 P.3d 844, 847 (Alaska 2003) (finding abuse of discretion where trial court failed to inform a pro se litigant of procedure for opposing summary judgment); *Collins v. Arctic Builders*, 957 P.2d 980, 982 (Alaska 1998) ("In light of *Breck*, we hold that the superior court must inform a pro se litigant of the specific defects in his notice of appeal.... [T]he failure to do so is manifestly unreasonable and thus constitutes an abuse of discretion.").

**24.** *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989).

**25.** Rule 5(g)(2) provides: "[I]f a party appeared in his or her own behalf in the prior action or proceeding, the paper served shall include notice to the party of the party's right to file written opposition or response, the time within which such opposition or response must be filed, and the place where it must be filed."

**26.** *Breck*, 745 P.2d at 75. In his reply brief, Azimi cites to the higher standard articulated in *Hudson v. Hardy* and *Roseboro v. Garrison*, requiring that "a district court, as a bare minimum, should provide the [pro se] prisoner with fair notice of the requirements of the summary judgment rule." *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C.Cir.1968); *see also Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir.1975). But we have declined to extend to all pro se litigants the special protections afforded pro se prisoners, including the right to receive notice of the consequences of failing to respond to a summary judgment motion. *Bauman*, 768 P.2d at 1098–99.

to include affidavits with his opposition to Johns's summary judgment motion is the type of defect that the court is obligated to point out to a pro se litigant. This was the situation in *Breck*, where the plaintiff opposed the defendants' motion for summary judgment but did not attach previously submitted evidence in the form of affidavits.[27] There, we held that "Breck should have been advised of the necessity of submitting affidavits to preclude summary judgment."[28] Here, the superior court acknowledged its obligations under *Breck* when it noted, in the context of a question about the appropriateness of denying a continuance, "[i]f this were to come to me on summary judgment where the plaintiff is not represented by counsel, before I could grant summary judgment I would have to warn him and advise him how to accomplish what it is that he needs to do." The superior court did explain briefly what Azimi needed to do to file a written opposition, but did not mention the necessity of submitting affidavits or serving the opposition on opposing counsel. The court's duty to correct Azimi was mitigated by the notice of motion Azimi received from Johns, which referred to Civil Rule 77; we have held that information provided by the opposing party may be considered in evaluating whether a pro se litigant has received adequate notice of procedural requirements.[29] Here the references in the notice of motion were not explicit enough to meet the standard set out in *Breck* regarding the court's responsibility.

## 2. Any deficiency in the explanation of how to oppose the motion for summary judgment was harmless.

The superior court did not advise Azimi that he needed to file admissible evidence in opposition to Johns's summary judgment motion. As Azimi notes in his brief, we held in *Jennings v. State* that when evaluating a motion for summary judgment, "the superior court should [go] outside the pleadings to consider the entire setting of the case to the extent the material was brought to the court's attention by the parties on the motion."[30] In *Breck* we noted, "Even where affidavits have not been submitted, the trial court still has a duty to consider the evidence referred to by the party opposing summary judgment."[31]

Just as we found in *Breck*, in this case "[t]here is no indication that the superior court ... failed to fulfill that duty."[32] The court told Azimi, "[y]ou haven't responded with the kinds of evidence necessary to raise a genuine issue of material fact in opposition to the defendant's motion for partial summary judgment on wage loss." The superior court never mentioned the absence of affidavits or other admissible evidence. It is possible that the superior court did not consider Azimi's trip sheets—which had been lodged at the court's December 29 pretrial conference and served as the basis for Azimi's opposition to the motion for summary judgment—but we find such speculation unwarranted. As discussed more fully below, the trip sheets did not raise a genuine issue of material fact sufficient to defeat Johns's motion for partial summary judgment. Even if Azimi had submitted the trip sheets in affidavit form, the evidence would not have changed the merits of his opposition. Any deficiency in the court's explanation of the proper form for Azimi's opposition was harmless.

---

27. *Breck*, 745 P.2d at 69.

28. *Id.* at 75.

29. *See Willoya v. State, Dep't of Corrs.*, 53 P.3d 1115, 1123 (Alaska 2002) (superior court not required to give pro se litigant formal notice of requirements for opposing summary judgment motion where motion itself observed expert testimony was needed to support medical negligence claims).

30. 566 P.2d 1304, 1310 (Alaska 1977). The court is to consider "the affidavits, depositions, admissions, answers to interrogatories, and similar material" in making its decision and "[t]he parties need not formally offer their outside matter as evidence or have it marked as an exhibit at the hearing on the motion." *Id.* (citing 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2723, at 475–76 (1st ed.1973)).

31. 745 P.2d at 75.

32. *Id.*

### C. The Superior Court Did Not Err By Granting Johns's Motion For Partial Summary Judgment On Lost Wages.

 Johns's memorandum in support of his motion for partial summary judgment argued that Azimi had not provided documentary proof of wage loss and was therefore barred from seeking "speculative lost wage damages." The superior court explained to Azimi its reasons for granting Johns's motion for partial summary judgment on wage loss by saying, "[y]ou haven't responded with the kinds of evidence necessary to raise a genuine issue of material fact." Orders granting summary judgment are to be reviewed de novo; the issue on appeal, then, is whether Azimi raised a genuine issue of material fact with regard to his wage loss claims.[33] We hold that he did not.

Azimi was initially reluctant to turn over income information requested by Johns's attorney on the grounds that his tax returns were a "compact" between "[him] and his government." The superior court ordered Azimi to sign a release of IRS records prior to his departure for Iran. Azimi complied, but Johns was only able to obtain a Social Security statement indicating that Azimi had not declared any income from 1994 through 2006 and had filed tax returns showing earnings of $1,176 in 2007.[34] Johns argued in his motion for partial summary judgment that, because income data was unavailable and Azimi had failed to present any alternative evidence of wage loss, Azimi could not meet his burden of proving wage damages with reasonable certainty.[35] At the December 29 pretrial conference, Azimi provided Johns with trip sheets listing all of the cab fares he had picked up in 2003 and 2004. Azimi contended—both at the pretrial conference and in his opposition to Johns's motion—that the trip sheets were the only documentation of his income and were, under municipal law, "lawful and legal documents" sufficient to show wage loss.[36]

Azimi's opposition to the motion for partial summary judgment, a single paragraph in which he fails to explain how the trip sheets raise a genuine issue of material fact regarding wage loss, is insufficient to avoid summary judgment. Even putting aside the shortcomings of Azimi's opposition, the trip logs themselves appear to have little probative value. As Johns countered in his reply, "a hand-written alleged running tabulation of receipts from a business is not the same as records . . . regarding . . . [business] profits." In other words, the trip logs did not constitute evidence of Azimi's net income before or after the accident. Other than the trip logs, Azimi presented no support for his claim of lost wages, instead simply asserting that "wage loss is . . . part of [the] accident."

 "The party opposing summary judgment must set forth specific facts showing genuine issues and cannot rest on mere allegations."[37] In order to establish a claim

---

**33.** *See, e.g., Alyeska Pipeline Serv. Co., Inc. v. Beadles*, 731 P.2d 572, 574 (Alaska 1987) ("In reviewing the superior court's grant of summary judgment on the issue of punitive damages, we must ascertain whether any genuine issue of material fact exists; if not, [the moving party] accordingly is entitled to judgment as a matter of law.").

**34.** Upon questioning by the trial court at the December 29 pretrial conference, Azimi confirmed that he had not filed tax returns for the years 1979–1987, 1989, 1991, or 1993–2006.

**35.** *See Sisters of Providence in Wash. v. A.A. Pain Clinic, Inc.*, 81 P.3d 989, 1006 (Alaska 2003) (citing *Geolar, Inc. v. Gilbert/Commonwealth, Inc.*, 874 P.2d 937, 946 (Alaska 1994) ("[L]ost profits must be proven with reasonable certainty.")).

**36.** In his "Reply Excerpt of Record," submitted on appeal, Azimi provided a letter allegedly from the supervisor of Liberty Tax Services in Anchorage, indicating that "it has become common practice for operators of vehicles for hire and others earning income and taking expenses related to that income that a journal of some type be maintained. Generally speaking the ONLY documentation required to file taxes for vehicle income and expenses is a signed log book or trip sheets to verify the amount of income for tax purposes." Azimi did not mention this letter in his initial appellant brief and its format as presented in the excerpt makes it difficult to verify. In any case, Johns argued that Azimi's trip logs did not include expenses, suggesting that the logs would not provide adequate documentation for purposes of filing taxes (or showing net income loss), even based on the contents of the Liberty Tax Services letter.

**37.** *Okpik v. City of Barrow*, 230 P.3d 672, 677 (Alaska 2010) (internal quotation marks and citations omitted).

for damages, "[l]ost profits must be proven with reasonable certainty"[38] and "evidence must afford sufficient data from which the court or jury may properly estimate the amount of damages."[39] In the absence of relevant data and specific facts supporting a claim of damages, we agree with the superior court that Azimi failed to meet his burden of raising a genuine issue of material fact as to whether Azimi suffered wage loss as a proximate result of Johns's negligence. Therefore, partial summary judgment in favor of Johns was appropriate on Azimi's wage loss claim.

### D. It Was An Abuse Of Discretion To Dismiss Azimi's Complaint.

The Alaska Rules of Civil Procedure address both voluntary and involuntary dismissal of complaints. Civil Rule 41(a) addresses voluntary dismissal at the plaintiff's request, by stipulation, or by order of court.[40] Civil Rule 41(b) provides for involuntary dismissal in cases of "failure of the plaintiff to prosecute," "failure of the plaintiff to ... comply with these rules or any order of court," and on "the ground that upon the facts and the law the plaintiff has shown no right to relief."[41] Neither Civil Rule 41(a) nor Civil Rule 41(b) provide a basis for the dismissal of the complaint in this case.

After granting partial summary judgment on Azimi's wage loss claim, the superior court went on to dismiss the remainder of Azimi's complaint with prejudice. The grounds for dismissal are somewhat unclear. Although the court stated both orally and in its written order that it was granting "the motion to dismiss"—an apparent reference to Johns's written motion to dismiss—Johns's attorney argued on appeal to our court that the superior court acted sua sponte, dismissing the case because Azimi voluntarily chose to have it dismissed after his requested continuance was denied. This argument implies that the court acted pursuant to Civil Rule 41(a). But Johns's January 6 written motion to dismiss argued that Azimi had "ignore[d] the court's pre-trial order" and "ha[d] no experts and no exhibits" and could not meet his burden of proving his case because he did not have an expert qualified to testify about his PTSD claim. These allegations suggest a motion for involuntary dismissal under Civil Rule 41(b). Because we find that Azimi neither requested voluntary dismissal under 41(a) nor qualified for involuntary dismissal under 41(b), we conclude it was an abuse of discretion to dismiss Azimi's complaint.

### 1. Azimi did not request voluntary dismissal.

■ Notwithstanding Johns's arguments, we find no indication in the record that Azimi requested dismissal. As Johns's attorney emphasized at oral argument before our court, Azimi did at times characterize the trial as presenting a choice between maintaining his health and following the superior court's procedural requirements. For example, at the December 29 pretrial conference, Azimi asked, "Your Honor ... does my head come first or the law come first?" The judge replied, "That's your decision to make." At the January 21 trial call, Azimi reiterated to the court, in explanation for his lack of preparation, "I don't know what to tell you except to say that my head comes first." Relying on these statements, Johns argues that Azimi communicated to the superior court that, if it refused to grant him a continuance, he would be unwilling or unable to go forward with the trial. Johns concludes from this that Azimi implicitly requested voluntary dismissal. We disagree. After the superior court denied Azimi's request for continuance, Azimi was not squarely given the choice between dismissal and going forward with the trial. Nothing Azimi said during the pretrial conference or at trial call demonstrated a preference for voluntary dismissal over the opportunity to go to trial. Azimi stated that his "head [came] first" in the specific context of explaining his request for continuance and

---

38. *Sisters of Providence in Wash.*, 81 P.3d at 1006 (citing *Geolar, Inc.*, 874 P.2d at 946).

39. *Id.* at 1007 (citing *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 223 (Alaska 1978)).

40. Alaska R. Civ. P. 41(a).

41. Alaska R. Civ. P. 41(b).

explaining his lack of preparation, not as a decision to dismiss his case rather than going to trial. Because Azimi did not request voluntary dismissal, it would have been an abuse of discretion to dismiss his complaint sua sponte under Civil Rule 41(a).

### 2. Azimi did not fail to prosecute his claim.

 Civil Rule 41(b) does not provide justification for the involuntary dismissal of Azimi's complaint. The first of 41(b)'s grounds for dismissal, failure to prosecute, has a very specific meaning. It is applicable only if "the case has been pending for more than one year without any proceedings having been taken" or "the case has been pending for more than one year, and no trial or mandatory pretrial scheduling conference has been scheduled or held."[42] A "proceeding" is defined as "a step, act or measure of record, by the plaintiff, which reflects the serious determination ... to bring the suit to resolution; or a step, act or measure of record, by either party, which reflects that the suit is not stagnant."[43] The various motions and oppositions filed by Azimi during the year prior to dismissal (e.g., his motion for transportation costs and his opposition to Johns's motion for partial summary judgment), regardless of their merits, are adequate to meet this definition of "proceedings." At the very least, Johns's litigation steps during this period "reflect that the suit [was] not stagnant," thus precluding dismissal for want of prosecution.

### 3. Azimi did not willfully fail to comply with court orders.

 The second ground for involuntary dismissal under Rule 41(b) is "failure of the plaintiff to ... comply with these rules or any order of court." Johns noted in his motion to dismiss that the superior court "has provided plaintiff with adequate notice of an intention to dismiss this matter if plaintiff continues to ignore the court's pre-trial order" to provide exhibits and jury instructions, and cited Azimi's statement that "he would not jeopardize his health in order to comply with the court's order regarding exhibits." Johns's argument implies that Azimi's actions merited involuntary dismissal as a Civil Rule 41(b) sanction for "failure ... to comply with ... any order of court."

 We note that the bar for dismissal on the grounds of failure to comply with court orders is high:

> A trial court's discretion to order litigation-ending sanctions is severely limited, whether the dismissal is requested as a discovery sanction under Civil Rule 37, or for non-compliance with court orders pursuant to Civil Rule 41(b).... There must be "willful noncompliance" with court orders, or "extreme circumstances," or "gross violations" of the Rules. The record must also "clearly indicate a reasonable exploration of possible and meaningful alternatives to dismissal."[44]

In discussing dismissal as a discovery sanction, we have described "willful noncompliance" as a "conscious intent to impede" trial proceedings,[45] distinguishable from "delay, inability, or good-faith resistance."[46] Here, the superior court found that Azimi was "educated and articulate," that his medical problems did not interfere with his ability to prepare for trial, and that he had not presented any other excuse for his delays. These conclusions do suggest that Azimi's non-compliance was not due to excusable "delay" or "inability." But neither did his actions rise to the level of a "willful" intent to impede the trial. Azimi's testimony reflects a belief that complying with court orders would pose risks to his health and, to a lesser

---

**42.** Alaska R. Civ. P. 41(e)(1)(A)-(B).

**43.** *Shiffman v. K, Inc.*, 657 P.2d 401, 403 (Alaska 1983).

**44.** *Arbelovsky v. Ebasco Servs., Inc.*, 922 P.2d 225, 227 (Alaska 1996) (internal citations omitted).

**45.** *Honda Motor Co., Ltd. v. Salzman*, 751 P.2d 489, 492 (Alaska 1988).

**46.** *Otis Elevator Co., Inc. v. Garber*, 820 P.2d 1072, 1074 (Alaska 1991).

extent, confusion regarding what materials the court was requesting.[47]

Moreover, as of the January 21 trial call, Azimi had effectively complied with the court's orders regarding witnesses and exhibits. He had provided a witness list to Johns's attorney, albeit one that included some witnesses whom he would not have been permitted to call. More importantly, Johns's own trial brief reveals that Johns was in receipt of the information that would typically be provided in at least basic discovery responses. Azimi had produced his cab trip sheets, as well as some medical records and medical releases, and other medical records had been obtained by Johns's counsel. Azimi does not appear to have provided proposed jury instructions before the trial call date, but his failure to do so did not prejudice Johns. Johns provided his own set of proposed instructions; if anything, he was advantaged by Azimi's failure to propose a set. We have never held that the failure to prepare jury instructions, alone, merits litigation-ending sanctions for a pro se litigant.

■ In addition, we have long held that before a litigation-ending order is entered on the basis of a pro se litigant's failure to prosecute or to abide by court rules, the court must give the litigant notice and an adequate opportunity to cure the defects in his pleadings.[48] Here, the superior court did inform Azimi that if he was not prepared for trial, "we'll have the jury picked and if you don't put on any evidence, I will end up having to dismiss your case." But contrary to the superior court's December 19 warning, the court dismissed the case before trial, without determining that Azimi's evidence was insufficient to prove any of his claims, and Azimi was never squarely given the

choice to proceed to trial or have his complaint dismissed. If Azimi's complaint was dismissed on the basis of his alleged failure to comply with court orders, it was an abuse of discretion.

**4. Because Azimi had not completed the presentation of his evidence, his complaint could not be dismissed on the ground that he failed to show he was entitled to relief.**

■ Johns's motion to dismiss could also be construed as an attempt to request dismissal on the third ground provided under Civil Rule 41(b):

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then weigh the evidence, evaluate the credibility of witnesses and render judgment against the plaintiff even if the plaintiff has made out a prima facie case.[49]

Johns's motion to dismiss implies that Azimi has "shown no right to relief": he notes that "[p]laintiff's case is one of claiming PTSD after a relatively minor motor vehicle accident" and "[p]laintiff now has no experts and no exhibits" to support his claim. Similarly, Johns argues in his brief that Azimi had no exhibits a week before the trial was to begin, and "did not produce any expert evidence that his post traumatic stress was caused by the accident."

We hold that Johns failed to make the required showing under this provision of 41(b). First, Civil Rule 41(b) applies only to

---

47. For example, Azimi attributed his failure to file timely jury instructions to confusion about the trial process: "I thought maybe the day comes and we're going to talk and ask questions and then we pick the jury."

48. *Collins v. Arctic Builders*, 957 P.2d 980, 982 (Alaska 1998) (holding that "the superior court must inform a *pro se* litigant of the specific defects in his notice of appeal and give him an opportunity to remedy those defects" before dismissal of the litigant's claims for want of prosecution and untimeliness).

49. Civil Rule 41(b) was amended in January 1987 by Supreme Court Order 798. This change "overruled our former Civil Rule 41(b) requirement that the trial judge deny a motion to dismiss when the plaintiff has made an unimpeached prima facie case." *Fletcher v. Trademark Const., Inc.*, 80 P.3d 725, 733 (Alaska 2003). Regarding the pre-amendment prohibition on dismissal of a prima facie case, see, for example, *State v. O'Neill Investigations, Inc.*, 609 P.2d 520 (Alaska 1980) and *Correa v. Stephens*, 429 P.2d 254 (Alaska 1967).

judge-tried cases; it seems clear from the record that the parties and the court were contemplating a jury trial, and there is no indication that Azimi changed his mind and waived his right to a jury. Even if he had, Civil Rule 41(b) would not provide a mechanism for dismissing his case because a motion to dismiss for failure to show a right to relief may be made only *after* plaintiff "has completed the presentation of the plaintiff's evidence." This is consistent with the Rule's expectation that the superior court will then "weigh the evidence" and "evaluate the credibility of witnesses" before deciding whether to grant the motion. Only if it has heard the plaintiff's case can the court fairly determine whether to render judgment against the plaintiff under Civil Rule 41(b). Here, Azimi's case was dismissed at the trial call, before he had presented any testimony or argument. At that stage of the proceedings, a motion to dismiss under Civil Rule 41(b) on the grounds that Azimi failed to demonstrate a right to relief would have been premature.

There is a separate reason for concluding that Civil Rule 41(b) did not provide a valid basis for dismissal: Azimi's lack of an expert witness probably precluded him from proving causation with respect to his PTSD claim, but PTSD was not Azimi's only claim. His complaint also alleged that he experienced general "bodily injury" and "pain," and it is apparent that Johns's lawyer had evidence of this more generalized claim.[50] We have said that neck and back injuries, unlike PTSD, are typical results of auto accidents, such that "lay testimony" is sufficient to present these claims to a jury.[51] Thus, even without an expert witness, Azimi's own testimony could have supported his claims of bodily injury. The fact that Azimi's testimony may have established a prima facie claim is not enough in itself to avoid dismissal, as 41(b) makes clear, but the trial court may render such a judgment only after weighing the evidence. Azimi's complaint included claims

of bodily injury for which his own testimony might have been sufficient evidence. If his claim for "bodily injury" was dismissed under Civil Rule 41(b) based on his failure to identify an expert witness, the dismissal was an abuse of discretion.

## V. CONCLUSION

We AFFIRM the superior court's orders granting the motion for partial summary judgment on Azimi's wage loss claim and denying the requests to continue trial. We REVERSE the dismissal of the complaint and entry of final judgment for Johns and remand for further proceedings consistent with this opinion.

STOWERS, Justice, not participating.

over the course of his physical therapy. This appears to be information defendant gleaned from Azimi's medical records.

**50.** According to Johns's trial brief: (1) Azimi complained of minor head and neck pain the day following the accident; (2) two weeks later, he returned to the hospital and reported back pain; (3) two months after the accident, Azimi attended seven physical therapy sessions at which he complained of both anxiety and low back pain; and (4) the low back pain apparently disappeared

**51.** *See, e.g., Choi v. Anvil,* 32 P.3d 1, 3 (Alaska 2001).